UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORRIE L. LEWIS, ex rel.,<br>J.M., a minor for DAISY E.<br>NICHOLSON (Deceased Mother)<br>SSN: XXX-XX-5793,<br><br>    Plaintiff,<br><br>v<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>    Defendant. | No. 13 C 4035<br><br>Magistrate Judge Susan E. Cox |

**ORDER**

Plaintiff Corrie E. Lewis ex rel. J.M., a minor, brings this action seeking reversal or remand of the Administrative Law Judge's decision denying her application for Disability Insurance Benefits and Supplemental Security Income under Title II and XVI of the Social Security Act. For the reasons set forth below, plaintiff's Motion for Summary Judgment [dkt. 27] is granted. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**STATEMENT**

Plaintiff Corrie E. Lewis ex rel. J.M., a minor, seeks to overturn the Administrative Law Judge's ("ALJ") decision denying Daisy Nicholson's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social

Security Act.[1] Because Daisy Nicholson, whose alleged disability is at issue here, is deceased, the plaintiff in this case is her mother, Corrie Lewis, along with J.M., Ms. Nicholson's grandchild. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). After careful review of the record, the Court now remands the case for further proceedings.

I. FACTUAL BACKGROUND

Plaintiff was born July 4, 1963 and was forty-eight years old when the ALJ issued her decision denying disability benefits.[2] Plaintiff, who previously worked as a barber, LPN, and CNA,[3] had been unemployed since 2005 when she stopped working to care for her ailing daughter who later passed away at the age of twenty-four.[4] Plaintiff applied for DIB and SSI on March 1, 2010, alleging disability as of June 22, 2007.[5] However, since a prior application for DIB and SSI was rejected on July 30, 2009,[6] the earliest date of disability onset must be July 31, 2009.[7] In her most recent application for benefits, plaintiff identified depression, anxiety, diabetes, seizures, a prolapsed colon, spinal damage, blurred vision, high blood pressure, and pancreatic issues as the conditions impacting her ability to work.[8] After the hearing before the ALJ, plaintiff passed away on February 17, 2013, at the age of forty-nine as a result of a heart attack.[9]

---

[1] 42 U.S.C. §§ 405(g), 1383(c).
[2] R. at 98.
[3] R. at 201.
[4] *Id.*; R. at 395.
[5] R. at 24.
[6] *Id.*
[7] *Id.*; R. at 53.
[8] R. at 36; R. at 199.
[9] Brief for Plaintiff at 2, *Corrie Lewis ex rel. J.M. v. Colvin*, No. 1:13-cv-04035 (D. N.D. Ill. filed May 31, 2013).

Plaintiff had only one treating physician, Olalekan O. Sowade, M.D. since June 2006 who she saw on a sporadic basis through August 2011.[10] In addition to visits to Dr. Sowade, plaintiff was also hospitalized on multiple occasions, once under the care of Dr. Sowade[11] and three times for treatment unrelated to plaintiff's disability application.[12] The ALJ references all of these visits and also highlights plaintiff's chronic alcohol abuse throughout her medical history.[13] In June 2010 plaintiff was examined by two state agency physicians,[14] and her records were reviewed by four additional medical consultants.[15] We will review their assessments of plaintiff's medical history as it was addressed by the ALJ.

### A. Treating Physician

Dr. Sowade intermittently saw plaintiff, often in connection with refills for her medications, from 2006 - 2011.[16] His initial assessments of plaintiff included seizures, hypertension, and other ailments.[17]

Following a period of irregular visits from June 2006 through November 2008, Dr. Sowade saw plaintiff in February 2010 and assessed her with new onset diabetes mellitus.[18] Dr. Sowade prescribed insulin, and continued to check blood glucose levels during visits through August 2011.[19] These visits consistently included notations regarding plaintiff's diabetes mellitus, alcohol abuse, and seizures.[20] In September 2010, Dr. Sowade admitted plaintiff to the

---

[10] R. at 38.
[11] R. at 31; R. at 469.
[12] R. at 27-8; R. at 300; R. at 332; R. at 344.
[13] R. at 27-29.
[14] R. at 29-30; R. at 423-32; R. at 435-40.
[15] R. at 31.
[16] R. at 27-9; R. at 31-2; R. at 598-713.
[17] R. at 705.
[18] R. at 28; R. at 674.
[19] R. at 28; R. at 598-674.
[20] R. at 598-668.

hospital due to uncontrolled diabetes with elevated blood glucose.[21] She was seen again after falling in July 2011,[22] when plaintiff complained of pain in her legs and a lack of balance.[23] On August 23, 2011, five days after the hearing before the ALJ, plaintiff saw Dr. Sowade and again reported pain in both legs.[24] Dr. Sowade assessed plaintiff with diabetic neuropathy.[25]

### B. State Consulting Physicians

Plaintiff was examined by two state consulting physicians on June 12, 2010.[26] Norbert De Biase, M.D. conducted a physical examination during which plaintiff complained of numbness in her legs and feet and lower back pain, as well as her history of seizures.[27] Upon examination, Dr. De Biase noted that plaintiff could walk fifty feet unassisted, had normal gait and did not use an assistive device.[28] In addition, X-rays showed minimal degenerative scoliotic changes of plaintiff's lumbar spine.[29] Dr. De Biase's clinical assessments included seizures, diabetes, back pain, and depression.[30] Consulting psychiatrist John Franklin, M.D. also examined plaintiff, and noted plaintiff's reports of a history of depression and seizures, and complaints of chronic pain in her spinal region.[31] Dr. Franklin's diagnoses included major depression and psychosis, "not otherwise specified."[32]

An additional medical consultant prepared a physical residual functional capacity assessment,[33] and another completed a psychiatric review technique along with a mental residual

---

[21] R. at 31; R. at 469.
[22] R. at 78.
[23] R. at 32; R. at 601.
[24] R. at 32; R. at 598.
[25] R. at 32; R. at 598.
[26] R. at 29-30.
[27] R. at 29; R. at 423-25.
[28] R. at 29; R. at 425.
[29] R. at 30; R. at 420.
[30] R. at 30; R. at 426.
[31] R. at 29; R. at 435-36.
[32] R. at 30; R. at 439.
[33] R. at 31; R. at 442-48.

functional capacity assessment.[34] Several months later, these findings were affirmed by two additional state agency medical consultants.[35]

### C. ALJ's Findings

After considering the entire record the ALJ concluded that of her alleged conditions, plaintiff was severely impaired by her seizure disorder, diabetes mellitus, minimal degenerative scoliotic changes in the lumbar spine, moderate obesity, and major depressive disorder.[36] Of these impairments, plaintiff testified at the hearing that she was unable to work due mostly to her back pain.[37] Of her severe impairments, the ALJ found that none were of sufficient severity to meet or medically equal the applicable listing criteria.[38] The ALJ also found that plaintiff's alcohol abuse, among other conditions, had only a minimal effect on her ability to work.[39]

The ALJ conducted a thorough review of plaintiff's medical history, noting that the opinions of the state agency medical consultant who completed plaintiff's physical residual functional capacity assessment deserved significant weight and the state agency medical consultant who completed plaintiff's psychiatric review technique and mental residual functional capacity assessment was due great weight.[40] She also determined that plaintiff was "not credible concerning the severity of her limitations, weakness and leg pain, which she alleges are due to diabetes and poor sugar regulation."[41] The ALJ pointed to plaintiff's history of lying to get medical treatment and denials of alcohol abuse during her consultative examinations.[42] The ALJ further opined that plaintiff does not need a wheelchair or cane to ambulate, noting that the lack

---

[34] R. at 31; R. at 449-461; R. at 463-65.
[35] R. at 31; R. at 554.
[36] R. at 26.
[37] R. at 36.
[38] R. at 32.
[39] *Id.*
[40] R. at 38.
[41] R. at 37.
[42] *Id.*

5

of neurological studies done to investigate plaintiff's complaints of tingling, pain and weakness in her extremities "indicates that her symptoms are not as severe as she reports."[43] The ALJ further supported her conclusion with the absence of "objective signs of neuropathy" through years of treatment history until July 19, 2011, when there were still no "physical signs or referrals for further investigation."[44]

The ALJ also found plaintiff not credible regarding the frequency of her seizures, supporting her finding with plaintiff's admission that "she has had no seizure treatment in the emergency room or doctor's office"[45] and a recent blood test which refuted her testimony that she was compliant with her medication.[46] In light of these determinations, the ALJ found that plaintiff's residual functional capacity allowed her to perform light work,[47] and concluded that despite her physical and mental limitations, plaintiff was not disabled.[48]

## II.     STANDARD OF REVIEW

In reviewing the ALJ's decision, the Court must sustain the Commissioner's findings of fact if they are supported by substantial evidence and are free of legal error.[49] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[50] While the standard of review is deferential, the reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision.[51] The ALJ need

---

[43] *Id.*
[44] R. at 38.
[45] R. at 37.
[46] R. at 38.
[47] R. at 35.
[48] R. at 38.
[49] 42 U.S.C. § 405(g).
[50] *McKinley v. Astrue*, 641 F.3d 864, 889 (7th Cir. 2011) (citing *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009)).
[51] *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008).

not specifically "address every piece of evidence or testimony that is presented,[52] but must build a logical bridge between the evidence and the result.[53]

## III. FIVE STEP INQUIRY

Disability status is established under a sequential five-step analysis.[54] The ALJ must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the severe impairment meets or equals one considered conclusively disabling.[55] If the impairment(s) does, the inquiry is over and the claimant is disabled.[56] If not, the evaluation continues and the ALJ must determine whether: (4) the claimant is capable of engaging in past relevant work.[57] If not, the ALJ must (5) consider the claimant's age, education and prior work experience and evaluate whether she is able to engage in other work in the national economy.[58] In the final step the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due.[59]

## IV. DISCUSSION

We will focus on two main challenges to the ALJ's decision: that the ALJ improperly assessed plaintiff's residual functional capacity ("RFC") with regard to (1) her mental limitations in concentration, persistence, or pace; and (2) her physical limitations in connection with her difficulty ambulating and need for a wheelchair. We will only briefly discuss plaintiff's arguments that the ALJ failed to determine the frequency of her seizures and erred in her

---

[52] *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).
[53] *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009).
[54] *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4).
[55] 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4).
[56] 20 C.F.R. § 416.920(a)(4).
[57] *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981).
[58] *Id.*
[59] *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

7

credibility determination. Our review finds that more explanation is needed from the ALJ, which necessitates a remand.

### A. Limitations in Concentration, Persistence, or Pace

Plaintiff contends that the ALJ failed to adequately account for her moderate limitations in concentration, persistence, or pace in the ALJ's RFC determination and in the hypotheticals posed to the vocational expert ("VE"). The ALJ agreed with the finding by "DDS state agency medical consultants" who "opined that the claimant had moderate difficulties" with regard to concentration, persistence or pace.[60] The ALJ must articulate the reasons for her assessment of a claimant's RFC and, generally, an ALJ is required to present the totality of a claimant's limitations to the VE.[61] The best way to do so is to include all limitations, including mental ones, in the hypothetical.[62]

Standing alone, a limitation to "simple tasks" in an RFC determination is insufficient to address mental limitations such as those in concentration, persistence, or pace.[63] This is because the ability to learn a task of a certain complexity is distinct from the ability to continue to execute that task over an extended period of time, as is required to sustain job performance.[64] Thus, the ability to maintain a job is disconnected from the level of difficulty of the tasks required, even if they are "simple."[65] In addition, the Seventh Circuit has concluded that an ALJ may not account

---

[60] R. at 34.
[61] *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).
[62] *Id.*
[63] *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009); *O'Connor-Spinner*, 627 F.3d at 619-20 (asserting that an ALJ's hypothetical which was restricted to "routine repetitive tasks with simple instructions" inadequately addressed moderate limitations in concentration, persistence, and pace).
[64] *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85); *see also* SSR 85-15 (S.S.A.), 1985 WL 56857 at *6 (1985).
[65] *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85); *see also* SSR 85-15 (S.S.A.), 1985 WL 56857 at *6.

for "limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks."[66]

But the Seventh Circuit has also acknowledged that there is not a per se requirement to use the exact language of "concentration, persistence, or pace" in a hypothetical posed to a VE.[67] In *O'Connor-Spinner v. Astrue* the court noted two exceptions, the second of which applies when it is clear from the ALJ's language that the mental limitations are somehow incorporated.[68] The court indicated this would most often be the case when the limitations are either triggered by, or clearly linked to, a condition or circumstance which is explicitly addressed in the hypothetical.[69] For example, a hypothetical that restricts the claimant to low-stress work is sufficient when the limitations in concentration, persistence or pace are brought on by stress.[70]

Here the ALJ's questions to the VE satisfy the second exception with regard to pace. After the fourth hypothetical the ALJ asked the VE "[h]ow much off-task time [would be] permitted."[71] The VE responded that the only previously identified available job where "persistence and pace is an issue" was ampule sealer.[72] The ALJ then asked the VE "[w]ould it be correct to say that in all other jobs, except for ampule sealer, the person is able to work at their own pace as long as they remain productive throughout the day?"[73] The VE confirmed this to be true.[74] The ALJ's question to the VE clearly demonstrates that the VE considered plaintiff's limitations in pace when identifying available jobs.

---

[66] *Stewart*, 561 F.3d at 684-85.
[67] *O'Connor-Spinner*, 627 F.3d at 619 (7th Cir. 2010).
[68] *Id.*
[69] *Id.* at 619-20.
[70] *Id.* at 619 (citing *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007)).
[71] R. at 91.
[72] *Id.*
[73] R. at 92.
[74] *Id.*

While the ALJ sufficiently addressed pace, the hypothetical she gave to the VE failed to incorporate plaintiff's limitations in concentration and persistence. The Commissioner argues that the hypothetical included all applicable mental limitations by relying on a line of reasoning found in *Johansen v. Barnhart* (though the Commissioner does not directly cite to this case).[75] The Commissioner notes that state agency medical consultant Michael J. Schneider, PhD (who the ALJ afforded great weight)[76] completed the mental RFC assessment worksheet and found that plaintiff was moderately limited in four of twenty work-related areas of mental functioning: (1) the ability to understand and remember detailed instructions, (2) the ability to carry out detailed instructions, (3) the ability to maintain attention and concentration for extended periods, and (4) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[77] Dr. Schneider then "translated" his findings,[78] and opined that plaintiff "has sufficient attentional focus for simple work" and "is mentally capable of performing simple tasks on a reasonably consistent basis."[79] With this as her basis for plaintiff's RFC, the Commissioner contends that the ALJ adequately included all of plaintiff's mental limitations in her hypothetical by restricting plaintiff to "simple, routine repetitive" tasks.

However, as we have already discussed, a restriction to simple, routine tasks does not address limitations in concentration, persistence, or pace,[80] and the "most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the

---

[75] *Johansen v. Barnhart*, 314 F.3d 283, 286 (7th Cir. 2002).
[76] R. at 38.
[77] R. at 463-64.
[78] *See Yurt v. Colvin*, - - - F.3d - - -, 2014 WL 3362455 at *7 (7th Cir. July 10, 2014) ("in addition to the finding that the claimant was 'moderately limited' in three areas, the consultative physician 'went further' and 'translated' his findings into a specific RFC assessment" (citing *Johansen*, 314 F.3d at 289)).
[79] R. at 465.
[80] *O'Connor-Spinner*, 627 F.3d at 619; *see generally Stewart*, 561 F.3d at 685 (collecting cases); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (restricting claimant to unskilled, simple work does not account for his difficulty with memory, concentration, and mood swings).

hypothetical."[81] The hypothetical in *Johansen* was upheld not because it integrated these "translated" findings, but because it still excluded positions likely to trigger the condition which formed the basis of claimant's limitations, which in that case was stress, as provided by the second exception under *O'Connor-Spinner*.[82]

As the Seventh Circuit articulated in *Yurt v. Colvin*, it is not sufficient to formulate a hypothetical based only on such "translated" findings unless it includes an additional restriction which addresses an underlying condition or otherwise addresses limitations in concentration, persistence, or pace.[83] Here the ALJ's hypothetical only incorporated plaintiff's limitations in concentration and persistence by restricting her to "simple, routine, repetitive tasks."[84] However this does nothing to ensure that the VE eliminated positions that would be unsustainable with plaintiff's documented limitations, which the ALJ incorporated into her decision,[85] nor does this language otherwise describe "underlying mental diagnoses" where the link between those conditions and plaintiff's mental limitations is clear.[86] This omission in the hypotheticals to the VE requires remand for further proceedings in accordance with this decision.

**B. Wheelchair**

While our findings with regard to the ALJ's handling of plaintiff's mental limitations is sufficient to warrant remand, we also address her RFC determination dismissing plaintiff's alleged need for a wheelchair to ambulate.[87] An ALJ must support her assessment of a claimant's

---

[81] *O'Connor-Spinner*, 627 F.3d at 619.
[82] *Yurt*, 2014 WL 3362455 at *7 (finding that the hypothetical in *Johansen*'s description of repetitive, low-stress work "specifically excluded positions likely to trigger the panic disorder that formed the basis of the claimant's limitations"); *O'Connor-Spinner*, 627 F.3d at 619; *Johansen*, 314 F.3d at 289.
[83] *Yurt*, 2014 WL 3362455 at *7-8.
[84] R. at 88.
[85] R. at 34.
[86] *Yurt*, 2014 WL 3362455 at *8; *O'Connor-Spinner*, 627 F.3d at 619-20.
[87] R. at 37.

RFC with either subjective or objective evidence.[88] The ALJ examined the medical records and testimony within the context of her credibility findings and weight assignments, finding "I do not believe the claimant requires a wheelchair or cane to ambulate."[89] Plaintiff testified that the wheelchair "came into effect" in association with her uncontrolled diabetes and waking up with high blood sugar near 500 for a week, when she also "was fainting and falling out."[90] Plaintiff stated that Dr. Sowade gave her the wheelchair because "her right side gave out and her legs went numb,"[91] and also because she had said that she "couldn't get out of the bed,"[92] as reflected in Dr. Sowade's July 19, 2011 clinic notations.[93] This evidence as a whole parallels the prescription for a wheelchair written by Dr. Sowade on the same date, which references "difficulty with ambulation" and "diabetes," in addition to "seizures."[94] Despite plaintiff's testimony and the prescription, the ALJ found that "Dr. Sowade ordered the wheelchair because claimant said she could not get out of bed, not because of any stated medical findings."[95]

In evaluating whether the ALJ's RFC determination regarding plaintiff's alleged need for a wheelchair is supported by substantial evidence we do not "displace the ALJ's judgment by reconsidering facts."[96] As such, we must take into account the fact that the ALJ gave significant weight to the physical RFC assessment completed by state consultant Julio Pardo, M.D in June 2010.[97] Dr. Pardo, utilizing the notes provided by state examining physician Dr. De Biase, noted

---

[88] *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).
[89] R. at 37.
[90] R. at 74.
[91] R. at 37; R. at 74.
[92] R. at 74.
[93] R. at 601.
[94] R. at 582.
[95] R. at 38.
[96] *Castille v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).
[97] R. at 38.

that plaintiff's gait was normal and no assistive device was needed, and concluded that plaintiff's condition "should not prevent her from doing the limitations described on this RFC."[98]

Furthermore, in her RFC assessment and hypotheticals the ALJ must only include limitations which are found to be credible.[99] Here the ALJ decided that plaintiff "is not credible concerning the severity of her limitations, weakness and leg pain, which she alleges are due to diabetes and poor sugar regulation."[100] Even so, the ALJ posed a hypothetical to the VE adding a cane to plaintiff's limitations.[101] The VE indicated this would reduce the exertional level to sedentary, but cited a significant number of available jobs.[102] In light of these considerations we uphold the ALJ's decision, finding that within the context of her credibility assessment there was substantial evidence to support her conclusion.

**C. Credibility and Seizures**

To provide additional observations on remand, we also briefly note issues with the ALJ's credibility determination and failure to determine the frequency of plaintiff's seizures. First, with respect to credibility we will not reverse the ALJ's determination unless it is so lacking in explanation or support that we find it patently wrong.[103] To evaluate credibility, an ALJ must review the entire case record and articulate specific reasons for her credibility determination, which must also be supported by the evidence.[104] Here the ALJ made an initial finding that plaintiff's "testimony is not credible and its substance shows she will lie to get treatment" based upon an incident where "she drank right in the emergency room to make the doctors believe she

---

[98] R. at 448.
[99] *Simila*, 573 F.3d at 521.
[100] R. at 37.
[101] R. at 38; R. at 90.
[102] R. at 38; R. at 90.
[103] *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).
[104] *Arnold*, 473 F.3d at 822 (citing SSR 96-7p).

needed a psychiatric admission."[105] The ALJ also concluded that "I do not believe the claimant requires a wheelchair or cane to ambulate," primarily citing the lack of neurological studies as an indicator that "her symptoms are not as severe as she reports."[106] However, in addition to the lack of neurological studies the ALJ, in accordance with the regulations,[107] further supported her conclusion by considering plaintiff's treatment history, noting that "the years of regular treatment notes did not show any objective signs of neuropathy, and did not even mention neuropathy until after the hearing."[108] We find that the ALJ's credibility determination, while not flawless, is supported by plaintiff's treatment history and her history of lying to medical providers. We, therefore, do not find it patently wrong.

Plaintiff also argues that the ALJ erred in failing to identify the frequency of her seizures after she concluded that plaintiff "is not credible regarding the frequency of her seizures."[109] The ALJ accounted for plaintiff's seizure disorder in her RFC by requiring that plaintiff "avoid concentrated exposure to hazardous machinery, unprotected heights, and not operate moving machinery,"[110] but never actually made a finding regarding their frequency. Here, plaintiff has failed to establish that her seizures impacted her ability to work beyond the ALJ's RFC findings because there is little evidence regarding the frequency of plaintiff's seizures. Furthermore, she indicated that she had not received any treatment for seizures since March 2010.[111]

---

[105] R. at 37.
[106] *Id.*
[107] 20 C.F.R. § 404.1529(c)(3)(v).
[108] R. at 38.
[109] R. at 37.
[110] R. at 35.
[111] R. at 37; R. at 64.

## V. CONCLUSION

For the reasons stated above, plaintiff's Motion for Summary Judgment is granted [dkt. 27] and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**ENTER:**

**DATED:** <u>August 28, 2014</u>

United States Magistrate Judge